IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No. 4:20-cv-60-M

| | |
|---|---|
| TERESA PRITCHARD as Administrator of the Estate of Cedric D. Pritchard, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) **PLAINTIFF'S RESPONSE TO** |
| vs. | ) **DEFENDANTS' STATEMENT OF**<br>) **UNDISPUTED MATERIAL FACTS**<br>) |
| AARON M. MOBLEY, in his individual capacity, and CITY OF WASHINGTON, | )<br>)<br>)<br>) |
| Defendants. | ) |

NOW COMES Plaintiff, pursuant to Local Civil Rule 56.1, and responds to Defendants' Statement of Undisputed Material Facts (Doc. 31) as follows:

**Response to Defendants' Statement of Undisputed Facts**

1. Admitted.

2. Admitted.

3. Admitted.

4. Partially admitted. After the Aztec passed Defendant Mobley's patrol vehicle on 15th Street and turned left onto Washington Street, Mobley drove around the block in order to intersect the Aztec on Washington Street and called communications to request a driver's license check for Mr. Pritchard. (Mobley Dep. pp. 114-19, Ex. 22) Defendant Mobley stopped his vehicle at the intersection of 13th Street and Washington Street and, once the Aztec passed him, Mobley turned left onto Washington Street behind the Aztec. (Mobley Dep. pp. 119-20)

5. Denied as stated. It is undisputed that within 10 seconds after Defendant Mobley turned left onto Washington Street, Mr. Pritchard applied the brakes on his vehicle and steered the Aztec towards the left side of Washington Street. (Mobley Dep. Ex. 35[1] at 14:48:29-14:48:38; Sutton Dep. Ex. 37 at p. 5; Mobley Dep. pp. 184-85) It is further undisputed that six seconds later, Mr. Pritchard stopped the Pontiac Aztec at the curb on the left side of the street in front of 1105 Washington Street. (Mobley Dep. Ex. 35 at 14:48:39-14:48:45; Sutton Dep. Ex. 37 at pp. 5-6; Mobley Dep. pp. 124-25, Ex. 23)

6. Admitted. (Mobley Dep. Ex. 35 at 14:48:38-14:48:46; Mobley Dep. p. 185; Sutton Dep. pp. 20-21) It is also undisputed that Defendant Mobley's reasonable suspicion for the traffic stop was that Mr. Pritchard violated the traffic laws by driving left of center and parking on the left-side curb. (Mobley Dep. pp. 121)

7. Admitted.

8. Denied. There is a genuine dispute about whether Mr. Pritchard was a suspect in an alleged robbery on Friday, October 19, 2018. Defendant Mobley saw Mr. Pritchard near the scene but he was not interviewed by the law enforcement officers. According to Defendant Mobley, Mr. Pritchard was not searched at the scene, he later denied any involvement in the incident, and there was no evidence against him. (Mobley Dep. pp. 87-89)

---

[1] Mobley Deposition Exhibit 35 is the video from the dash camera in Defendant Mobley's patrol vehicle. This video can be viewed on the 10-8 Video 2Ch Player, which has been included on the disc that has been manually filed.

There is a genuine dispute about whether Defendant Mobley knew before the shooting in this case that Mr. Pritchard was a suspect in a shootout after midnight on Saturday, October 20, 2018. Defendant Mobley was not working at the time of the incident, the night shift email did not refer to Mr. Pritchard, Defendant Mobley learned about a Facebook video concerning the incident after October 21, and Defendants have not presented any corroborating evidence. (Mobley Dep. 87-88, 90-93, Ex. 7) According to the incident report produced by Defendants, it is undisputed that Mr. Pritchard was searched by a City of Washington police officer after the shootout incident and did not have any weapons. (Incident Report – Discharging Firearm in the City, p. 2; Mobley Dep. pp. 94-95)

There is a genuine dispute about whether Defendant Mobley knew before the shooting that Mr. Pritchard was a convicted felon and Defendants have not presented any corroborating evidence. Defendant Mobley had never dealt with Mr. Pritchard "on an incident either directly or indirectly" before the shooting, had generally heard this information from another officer, and did not know any details. (Mobley Dep. pp. 87, 94)

It is undisputed that Defendant Mobley had never encountered Mr. Pritchard with a weapon, had no reason to believe Mr. Pritchard was armed or dangerous when he conducted the traffic stop, and did not perform a known high-risk traffic stop of Pritchard on October 21. (Mobley Dep. pp. 93, 129, 155, Ex. 25) There were no warrants for Mr. Pritchard's arrest and law enforcement was not "actively looking for him for any reason." (Mobley Dep. pp. 93-94)

3

9. Admitted. (Mobley Dep. pp. 185-86, Ex. 35 at 14:48:51; Sutton Dep. Ex. 37 at p. 7)

10. Admitted. (Mobley Dep. pp. 185-86, Ex. 35 at 14:48:51) It is undisputed that Mr. Pritchard began opening the door of the Aztec 5.4 seconds after he stopped his vehicle. (Sutton Dep. pp. 26-27, 52, Ex. 37 at pp. 6, 11)

11. Denied. It is undisputed that Pritchard exited the vehicle with his chest turned slightly towards Defendant Mobley's position with his right hand extended beyond the door of the Aztec. (Sutton Dep. Ex. 37 at p. 7) There is a genuine dispute about whether Defendant Mobley saw that Pritchard had a handgun in his hand in a firing position as he was exiting the vehicle in a running posture. (Mobley Dep. pp. 131-32, Ex. 35 at 14:48:51-14:48:52; Sutton Dep. pp. 29-31; Munday Expert Report p. 5)

12. Denied as stated. It is undisputed that Defendant Mobley immediately drew his .45 caliber Glock pistol when Pritchard exited the vehicle and started to run away from him. (Sutton Dep. Ex. 37 at p. 8; Mobley Dep. Ex. 35 at 14:48:52-14:48:53; Mobley Dep. pp. 187-89) It is also undisputed that Mr. Pritchard was not under arrest when he ran from Defendant Mobley at the traffic stop. (Complaint/Answer at ⁋ 51)

13. Partially admitted. It is undisputed that Mr. Pritchard ran from the Aztec and that Defendant Mobley took a few steps towards and onto the grassy area between the curb and sidewalk, squared his body and raised his handgun into a firing position while Pritchard was running. (Mobley Dep. Ex. 35 at 14:48:52-14:48:53; Mobley Dep. pp. 187-89; Sutton Dep. pp. 33-34, 36-37, Ex. 37 at pp. 7-9, 12-14, 17-22)

4

There is a genuine dispute about whether Defendant Mobley saw a gun in Mr. Pritchard's hand as he was running away. (Sutton Dep. pp. 39, 49-51, Ex. 37 at pp. 8-9; Mobley Dep. Ex. 35 at 14:48:52-14:48:53; Austin Interview pp. 15-16, 20-23, 50-52; Floyd Interview pp. 7-12)

14. Denied.

15. Denied as stated. It is undisputed that Defendant Mobley shot Mr. Pritchard two times from behind, without any verbal warning, as Pritchard was running away. (Mobley Dep. pp. 136, 140, 145, Ex. 35 at 14:48:53-14:48-54; Sutton Dep. Ex. 37 at pp. 9-12) One bullet struck Mr. Pritchard to the left of the spine in the middle of his back and the other bullet struck him in the right buttock. (Mobley Dep. pp. 138-39, Ex. 24; Pl's Expert Disclosures at pp. 2-3, 5)

16. Admitted. It is also undisputed that Mr. Pritchard did not fire a handgun at the scene and that the Smith & Wesson was loaded with five spent shell casings that were not capable of firing. (Mobley Dep. pp. 135-36, 193; Munday Expert Report at p. 6; Doc. 31-6 at pp. 3, 5)

17. Admitted.

18. Admitted.

19. Partially admitted. It is undisputed that Defendant Mobley was closer to Mr. Pritchard and at a different angle than the dash camera at times during the incident. It is further undisputed that Defendants admitted in the Answer that the dash camera video recorded all of the events alleged by Plaintiff in paragraphs 32-55, 61-63, and 70 of the Complaint and was the best evidence of these factual allegations.

(Complaint/Answer at ¶¶ 32-55, 61-63, 70) There is a genuine dispute about Defendant Mobley's credibility and his failure to activate the body worn camera before the shooting. (Mobley Dep. pp. 42-44, 66-67, 84-85, 111-14, 143, 175-78, Ex. 9, 21, 31 at pp. 11, 26-27, Ex. 34-36;[2] Munday Expert Report at pp. 2-3, 6; Heiberger Dep. pp. 24-25; Sutton Dep. pp. 52-53, 56-57)

20. Partially admitted. It is undisputed that the elapsed time from when the Aztec driver's door began to open until Defendant Mobley fired the first shot was 2.3 seconds, that the elapsed time from when Mobley's hand was on his firearm to the first shot was 1.1 seconds and to the second shot was 1.6 seconds, and that this portion of the incident occurred quickly. (Sutton Dep. Ex. 37 at pp. 6-12; Mobley Dep. Ex. 35 at 14:48:51-14:48:53) There is a genuine dispute about whether it was reasonable for Defendant Mobley to use deadly force when he did without any verbal warning to Mr. Pritchard. (Mobley Dep. pp. 136, 145-46; Heiberger Dep. pp. 14-16, 20-21, Ex. 40 at p. 1, 8-13; Munday Expert Report at pp. 3-7)

**Additional Material Facts Subject to Genuine Dispute**

21. Defendant Mobley did not believe that Mr. Pritchard was armed or dangerous when he made the decision to conduct a routine traffic stop at approximately 3:48 p.m. on Sunday, October 21, 2018. (Mobley Dep. pp. 93, 121-23, 129, 155, Ex. 25)

22. Defendant Mobley had sufficient time and opportunity to activate his body worn camera before the shooting but failed to do so in violation of accepted law

---

[2] Mobley Deposition Ex. 36 is the video from Defendant Mobley's body worn camera. This video can be viewed on the Windows Media Player.

6

enforcement standards. (Mobley Dep. pp. 84-85, 111-13, Ex. 21; Munday Expert Report at pp. 2-3, 6; Heiberger Dep. pp. 24-25; Sutton Dep. pp. 52-53, 56-57)

23. Mr. Pritchard was running away from the scene at a running pace rather than running slowly or at a jog, trot, or walk as claimed by Defendant Mobley. (Sutton Dep. p. 42, Ex. 37 at pp. 16-17; Mobley Dep. pp. 166-67, Ex. 31 at pp. 12-13, 32-33, 38)

24. Defendant Mobley was 20.4 feet from Mr. Pritchard and at a 35-degree angle to the left when he fired the first shot that struck Mr. Pritchard in the middle of his back to the left of the spine. (Sutton Dep. pp. 38, 43, Ex. 37 at pp. 17-19; Mobley Dep. Ex. 24; Pl's Expert Disclosures at p. 2, 5)

25. Mr. Pritchard had run 11.6 feet from the Aztec when he was first shot in the back by Defendant Mobley. (Sutton Dep. Ex. 37 at p. 23)

26. Contrary to Defendant Mobley's statements and testimony, Mr. Pritchard did not turn or twist his body to the right towards Defendant Mobley before the initial shot was fired and Defendant Mobley could not have seen Pritchard's right armpit or ribcage. (Sutton Dep. pp. 44-49, Ex. 37 at p. 23; Pl's Expert Disclosures at pp. 2-3, 5; Heiberger Dep. Ex. 40 at pp. 9-10; Munday Expert Report at p. 5; Mobley Dep. pp. 132-35, Ex. 31 at pp. 13, 31-32, 39, Ex. 33 at p. 14; Ex. 36 at 1:03-1:08)

27. Contrary to Defendant Mobley's testimony and sworn declaration, Mr. Pritchard did not point a gun at Defendant Mobley while he was running away and Defendant Mobley did not see the barrel of a gun pointed at him when he shot Pritchard. (Sutton Dep. pp. 49-51, Ex. 37 at pp. 7-9; Mobley Dep. Ex. 35 at 14:48:51-

7

14:48:54; Munday Expert Report at p. 6; Austin Interview pp. 15-16, 20-23, 50-52; Floyd Interview pp. 7-12)

28. After the initial shot, Defendant Mobley took a step and shot Mr. Pritchard a second time, a half second later, in the right buttock at a 15-degree angle to the left. (Sutton Dep. Ex. 37 at pp. 10-12, 20-22; Pl's Expert Disclosures at pp. 2, 5; Mobley Dep. Ex. 35 at 14:48:53-14:48:54)

29. At the time of the shooting, Mr. Pritchard did not pose an imminent threat of death or serious physical injury to Defendant Mobley and Mobley's use of deadly force was not justified and violated accepted law enforcement standards. (Mobley Dep. pp. 67-68, 71-73, 76-80, Ex. 16, Ex. 17 at pp. 1-2, 6-7, Ex. 18 at pp. 1, 10-18; Munday Expert Report at pp. 3-7; Heiberger Dep. pp. 14-16, Ex. 40 at pp. 1, 8-13)

30. It was feasible for Defendant Mobley to give a verbal warning before shooting Mr. Pritchard but Mobley failed to do so in violation of accepted law enforcement standards. (Mobley Dep. pp. 67-68, 80-81, 136, 145-46, Ex. 16; Heiberger Dep. pp. 20-21, Ex. 40 at pp. 1, 9, 13; Munday Expert Report at pp. 4-5, 7)

31. Defendant Mobley's credibility is at issue in this case. Defendant Mobley never completed a written statement although directed to do so at the scene by his supervisor, did not complete an incident or use of force report, and was not interviewed by anyone until October 25, 2018 after he consulted with legal counsel. (Mobley Dep. pp. 113-14, 151-52, 164-70, Ex. 16 at p. 7, Ex. 28-30, Ex. 33 at pp. 19-

8

Case 4:20-cv-00060-M   Document 33   Filed 06/17/21   Page 8 of 12

20, Ex. 36 at 2:00-2:05) Furthermore, Defendant Mobley has given five different and evolving explanations for shooting Mr. Pritchard:

 a. <u>October 21, 2018</u>: Immediately after the shooting, Defendant Mobley told Melvin Ward, the first person at the scene, that "I shot him. Guy tried to jump and run and he turned on me as he was getting out of the car with the gun in his hand." (Mobley Dep. p. 199, Ex. 36 at 1:03-1:08) Defendant Mobley did not tell Mr. Ward that the gun was pointed at him while Mr. Pritchard was running away.

 b. <u>October 25, 2018</u>: At his interview with the State Bureau of Investigation, Defendant Mobley told SBI Agent J.M. Lewis that he saw the barrel of the gun "at me at least one time as Mr. Pritchard was spinning out of the car and going into the yard." (Mobley Dep. Ex. 31 at p. 12) While Mr. Pritchard was running away, Defendant Mobley fired his weapon when he saw Pritchard's "right side rib cage, armpit rib cage going to the right, which would be to spin and shoot." (*Id.* at pp. 13-14) Defendant Mobley further stated that at the time of the shooting, he remembered "seeing armpit and rib cage," that Mr. Pritchard "twisted his right side back towards" Mobley so that Pritchard could see him, and that Mobley "saw him turning and … that's when his front side focused … and I shot him." (*Id.* at pp. 31-32, 39) Defendant Mobley did not tell the SBI Agent that the gun was pointed at him while Mr. Pritchard was running away.

9

c. <u>May 1, 2019</u>: At his interview with the Washington Police Department, Defendant Mobley told Captain Michael Broadwell that while Mr. Pritchard was running away, Mobley saw "the on [arm] pit and side and two shots, and he goes down." (Mobley Dep. pp. 173-74, Ex. 33 at pp. 13-14) Defendant Mobley did not tell Captain Broadwell that the gun was pointed at him while Mr. Pritchard was running away.

d. <u>October 19, 2020</u>: At his deposition, Defendant Mobley testified that as Mr. Pritchard was running away, "the barrel points at me … I can see ribcage, armpit and, at that point, I fire two shots, and he goes down." (Mobley Dep. pp. 132-33) Defendant Mobley further testified that Mr. Pritchard did not turn or rotate his body towards Mobley. Rather, Defendant Mobley saw Pritchard's right ribcage, right armpit, and the barrel of the gun pointed at him when Pritchard swung his right arm back in a natural running movement. (*Id.* pp. 133-35)[3] After watching the dash camera video, Defendant Mobley added that Mr. Pritchard cocked his right wrist towards Mobley when swinging his arm. Mobley then fired his gun within a millisecond afterwards. (*Id.* pp. 189-90) According to Mr. Sutton, in order for Defendant Mobley to have seen this occur, Mr. Pritchard would have needed to cock his wrist at a 45-degree angle towards Defendant Mobley. (Sutton Dep. pp. 50-51)

---

[3] Plaintiff has filed a video with Defendant Mobley's deposition testimony at page 132, line 8 through page 135, line 13. This video can be viewed on the VLC Media Player, which has been included on the disc that has been manually filed.

10

    e. <u>May 28, 2021</u>: In his Declaration, Defendant Mobley solely claims that he fired the weapon when Mr. Pritchard's right arm swung behind his back and the muzzle of the gun was pointed in his direction as shown in Figures 12 and 13 of Mr. Sutton's Expert Report. (Doc. 31-2 at ¶¶ 37-38) According to Mr. Sutton, Defendant Mobley shot Mr. Pritchard within the 1/10 of a second that elapsed between the images in Figures 12 and 13. (Sutton Dep. pp. 34-35, Ex. 37 at p. 9)

32. Defendant Mobley did not see that Mr. Pritchard had a handgun until after the shooting during the 1-2 minutes before he activated his body worn camera. (Mobley Dep. pp. 140-41, 143, 195-97, Ex. 35 at 14:48:51-14:50:24; Ex. 36 at 0:00-0:53; Floyd Interview at pp. 14-15; Munday Expert Report at pp. 5-6)

Pursuant to Local Rule 56.1(a)(5), Plaintiff has filed an Appendix with all evidence cited in this Response.

This the 17th day of June, 2021.

                                  <u>/s/ Carlos E. Mahoney</u>
                                  Carlos E. Mahoney
                                  Glenn, Mills, Fisher & Mahoney, P.A.
                                  P.O. Drawer 3865
                                  Durham, NC 27702-3865
                                  Telephone: 919-683-2135
                                  Facsimile: 919-688-9339
                                  cmahoney@gmfm-law.com
                                  N.C. State Bar No. 26509
                                  Counsel for Plaintiff

# CERTIFICATE OF SERVICE

I, Carlos E. Mahoney, hereby certify that on June 17, 2021, I electronically filed the foregoing document entitled, **Plaintiff's Response to Defendants' Statement of Undisputed Material Facts**, with the Clerk of Court for the Eastern District of North Carolina using the CM/ECF system which will give notice of the filing to the following counsel of record.

    Clay A. Collier
    Norwood P. Blanchard, III
    Crossley McIntosh Collier
    Hanley & Edes, PLLC
    5002 Randall Parkway
    Wilmington, NC 28403
    clayc@cmclawfirm.com
    norwood@cmclawfirm.com
    Counsel for Defendants

    Sean P. Cecil
    Edelstein & Payne
    P.O. Box 28186
    Raleigh, NC 27611
    sean@edelsteinpayne.com
    Counsel for Plaintiff

    /s/ Carlos E. Mahoney
    Carlos E. Mahoney
    Glenn, Mills, Fisher & Mahoney, P.A.
    P.O. Drawer 3865
    Durham, NC 27702-3865
    Telephone: (919) 683-2135
    Facsimile: (919) 688-9339
    cmahoney@gmfm-law.com
    N.C. State Bar No. 26509
    Counsel for Plaintiff

12

Case 4:20-cv-00060-M   Document 33   Filed 06/17/21   Page 12 of 12