## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION
### Case No. 4:20-cv-60-M

| | | |
|---|---|---|
| TERESA PRITCHARD as Administrator of the Estate of Cedric D. Pritchard, | ) ) ) ) | |
| Plaintiff, | ) ) | **PLAINTIFF'S MEMORANDUM IN RESPONSE TO** |
| vs. | ) ) | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| AARON M. MOBLEY, in his individual capacity, and CITY OF WASHINGTON, | ) ) ) ) | |
| Defendants. | ) | |

NOW COMES Plaintiff, pursuant to Local Civil Rule 7.1(f), and submits this Memorandum in response to Defendants' Motion for Summary Judgment. (Docs. 30-32) Defendants' Motion for Summary Judgment should be denied.

Defendant Mobley fatally shot Cedric D. Pritchard, age 27, without any verbal warning in the back and right buttock while Mr. Pritchard was running away from a traffic stop at 3:48 p.m. on Sunday, October 21, 2018. (Complaint/Answer at ¶¶ 1-2, 53; Mobley Dep. pp. 136-40) These facts are undisputed.

However, there are genuine issues of material fact about whether Mr. Pritchard posed an imminent threat of serious physical injury to Defendant Mobley when Mobley fatally shot him. (Pl's Rule 56.1 Resp., Doc. 33 at ¶ 9) At the moment when deadly force was used, Mr. Pritchard was running away and did not point a gun at Defendant Mobley or turn his body to the right in Mobley's direction. (*Id.* at ¶¶ 6-7) Defendant Mobley is not entitled to summary judgment on Plaintiff's excessive

force and civil battery claims either directly or on the basis of qualified immunity and public officer immunity. Defendant City of Washington is also not entitled to summary judgment on Plaintiff's civil battery claim.

## **Nature of the Case**

This is a civil rights action arising out of the fatal shooting of Cedric D. Pritchard by Defendant Aaron M. Mobley, a City of Washington Police Officer, during a traffic stop on the afternoon of October 21, 2018.[1]

On April 6, 2020, Plaintiff filed a Complaint against Defendants. (Doc. 1) Plaintiff asserted an excessive force claim in violation of the Fourth Amendment against Defendant Mobley under 42 U.S.C. § 1983 and a civil battery claim against Defendants under North Carolina law.

On June 8, 2020, Defendants filed an Answer. (Doc. 13) In the Answer, Defendants admitted that the dash camera video from Defendant Mobley's vehicle recorded all of the material facts alleged in the Complaint and was the best evidence of these factual allegations.[2] (Complaint/Answer at ¶¶ 32-55, 61-63, 70)

On May 28, 2021, Defendants filed a Motion for Summary Judgment and a Local Civil Rule 56.1 Statement of Undisputed Facts with an Appendix of Exhibits.

---

[1] Defendants refer to Mr. Pritchard as "an armed felon." (Defs' Memo. p. 2) There are factual disputes in this case about whether Defendant Mobley knew Mr. Pritchard was a convicted felon and whether he knew Pritchard had a gun in his possession when he shot him. (Pl's Rule 56.1 Resp. at ¶¶ 8, 11, 13, 27, 32)

[2] The dash camera video is marked as Mobley Deposition Exhibit 35. The video recorded all of the events at issue through the point when Defendant Mobley initially shot Mr. Pritchard in the back.

(Docs. 30-31) On May 29, 2021, Defendants filed a supporting Memorandum. (Doc. 32)

## **Statement of Facts**

Plaintiff incorporates by reference Plaintiff's Response to Defendants' Statement of Undisputed Material Facts. (Doc. 33) The facts viewed in the light most favorable to Plaintiff are as follows:

At approximately 3:48 p.m., on Sunday, October 21, 2018, Defendant Mobley was driving his patrol vehicle in Washington, NC when he saw a blue Pontiac Aztec being driven by Cedric Pritchard. (Pl's Rule 56.1 Resp. at ¶¶ 2-3) Defendant Mobley believed that Mr. Pritchard did not have a driver's license.[3] He drove around the block to intercept Mr. Pritchard on Washington Street and called communications to request a driver's license check. (*Id.* at ¶¶ 3-4)

Once the Aztec passed his patrol vehicle at a stop sign, Defendant Mobley turned left onto Washington Street behind Mr. Pritchard's vehicle. (Pl's Rule 56.1 Resp. at ¶ 4) Within ten seconds, Mr. Pritchard applied the brakes on his vehicle and steered the Aztec towards the left side of the street. Six seconds later, Mr. Pritchard stopped the Aztec at the curb in front of 1105 Washington Street. (*Id.* at ¶ 5)

Defendant Mobley activated the blue lights on his patrol vehicle and stopped his vehicle approximately 15 feet behind the Aztec. (Pl's Rule 56.1 Resp. at ¶ 6). Defendant Mobley decided to conduct a traffic stop because he had reasonable

---

[3] Defendants contend that Defendant Mobley knew Mr. Pritchard was a suspect in an armed robbery on Friday evening and a shootout on Saturday evening after midnight. (Defs' Memo. p. 3) These facts are in dispute. (Pl's Rule 56.1 Resp. at ¶ 8)

suspicion that Mr. Pritchard had violated the law by driving left of center and parking in the opposite direction on the left-side curb.[4] (*Id.* at ¶¶ 6-7) This was a routine traffic stop and Defendant Mobley did not believe that Mr. Pritchard was armed or dangerous. (*Id.* at ¶ 21) Defendant Mobley exited his patrol vehicle and took a few steps towards the Aztec without activating his body worn camera in violation of Washington Police Department procedures.[5] (*Id.* at ¶¶ 9, 19, 22)

Approximately five seconds after stopping the Aztec, Mr. Pritchard opened his door while Defendant Mobley was standing outside the patrol vehicle. (Pl's Rule 56.1 Resp. at ¶ 10) Mr. Pritchard exited the Aztec and began running quickly away from the traffic stop.[6] (*Id.* at ¶¶ 10-11, 23) Defendant Mobley immediately drew his .45 caliber Glock pistol, took a few steps forward, and raised his handgun into a firing position. (*Id.* at ¶¶ 12-13) Without any verbal warning, Defendant Mobley shot Mr. Pritchard twice as he was running: first, in the middle of the back, to the left of the spine, 1.1 seconds after drawing his gun, and second, in the right buttock a half

---

[4] Although Defendant Mobley claims that these traffic offenses are Class 3 misdemeanors (Mobley Dep. p. 121), each offense is only an infraction under North Carolina law. *See* N.C. Gen. Stat. § 20-146, § 20-162.1(a), § 20-176(a) (2020). An offense for driving without an operator's license is a Class 3 misdemeanor under N.C. Gen. Stat. § 20-35(a1). However, Defendant Mobley did not verify that Mr. Pritchard lacked a valid driver's license before the shooting occurred. (Mobley Dep. p. 124)

[5] Defendant Mobley did not activate his body worn camera until one or two minutes after the shooting. (Mobley Dep. pp. 84-85, 143, Ex. 36)

[6] Defendants contend that Mr. Pritchard pointed a gun at Defendant Mobley when he exited the vehicle. (Defs' Memo. p. 4) These facts are in dispute. There are also factual disputes about whether Defendant Mobley saw a gun in Mr. Pritchard's right hand before the shooting and whether Pritchard was running fast or slowly at a jog, trot, or walk as claimed by Mobley. (Pl's Rule 56.1 Resp. at ¶¶ 11, 13-14, 23, 32)

second later. (*Id.* at ¶¶ 15, 20) Mr. Pritchard died at the scene from the gunshot wound to the back. (Mobley Dep. pp. 141-43, Ex. 24; Pl's Expert Disclosures at p. 2)

Defendant Mobley was 20.4 feet from Mr. Pritchard and at a 35-degree angle to the left when he fired the first shot that struck Pritchard in the back. (Pl's Rule 56.1 Resp. at ¶ 24) At that point, Mr. Pritchard had run 11.6 feet from the Aztec. (*Id.* at ¶ 25) After the initial shot, Defendant Mobley took a step forward and shot Mr. Pritchard a second time in the right buttock at a 15-degree angle to the left. (*Id.* at ¶ 28) According to Plaintiff's forensic engineer, Michael Sutton, MSME, PE, the bullet trajectories were as follows:



(Sutton Dep. Ex. 37 at p. 21) The time that elapsed from the moment Mr. Pritchard opened the door of the Aztec until the first shot was 2.3 seconds. (Pl's Rule 56.1 Resp. at ⁋ 20) It was feasible for Defendant Mobley to have given a verbal warning to Mr. Pritchard before shooting him, but he failed to do so in violation of accepted law enforcement standards. (*Id.* at ⁋ 30)

Mr. Pritchard was running from Defendant Mobley when he was shot twice from behind. (Pl's Rule 56.1 Resp. at ⁋ 15) Contrary to Defendant Mobley's statements and testimony, Mr. Pritchard did not turn or twist his body to the right towards Defendant Mobley before the initial shot and Mobley could not have seen Pritchard's right armpit or ribcage.[7] (*Id.* at ⁋⁋ 26, 31b.-31d.) Also, contrary to Defendant Mobley's testimony and sworn Declaration, Mr. Pritchard did not point the barrel of a gun at Defendant Mobley when he swung his right arm backwards while running and Mobley did not see this occur.[8] (*Id.* at ⁋⁋ 14, 27, 31d.-31e.) According to Plaintiff's law enforcement experts, former State Highway Patrol Major W. David Munday and former Bethlehem Police Captain Ashley J. Heiberger, Defendant Mobley's use of

---

[7] Immediately after the shooting, Defendant Mobley told the first person at the scene, "I shot him. Guy tried to jump and run and he turned on me as he was getting out of the car with the gun in his hand." (Pl's Rule 56.1 Resp. at ⁋ 31a.)

[8] Contrary to Defendants' factual argument, this justification was noticeably absent from Defendant Mobley's initial three statements and he did not articulate it as the reason for shooting Mr. Pritchard until his deposition on October 19, 2020. (Pl's Rule 56.1 Resp. at ⁋⁋ 31a.-d.) Defendant Mobley now claims that within one-tenth of a second, he saw the barrel of a gun cocked towards him at a 45-degree angle and made the decision to shoot Mr. Pritchard. (*Id.* at ⁋⁋ 31d.-31e.)

deadly force was not justified and violated accepted law enforcement standards if these disputed facts are resolved in Plaintiff's favor.[9] (*Id.* at ¶ 29)

## Argument

"Summary judgment is appropriate only when there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law." *Betton v. Belue*, 952 F.3d 184, 190 (4th Cir. 2019) (*citing* Fed. R. Civ. P. 56(a)). The Court must view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in Plaintiff's favor. *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020); *Harris v. Pittman*, 927 F.3d 266, 278 (4th Cir. 2019). The Court does not weigh the evidence or make credibility determinations. *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018). These responsibilities are reserved for the jury at trial. *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991).

## I. Defendant Mobley Is Not Entitled to Summary Judgment on Plaintiff's Fourth Amendment Excessive Force Claim.

"The Fourth Amendment prohibits law enforcement officers from using excessive or unreasonable force in the course of making an arrest or otherwise seizing a person." *Betton*, 942 F.3d at 191 (*citing Graham v. Connor*, 490 U.S. 386, 395 (1989)). "Whether an officer has used excessive force is analyzed under a standard of objective reasonableness." *Henry v. Purnell*, 652 F.3d 524, 531 (2011) (en banc) (*citing*

---

[9] The opinions by Plaintiff's law enforcement experts assume that Defendant Mobley saw a gun in Mr. Pritchard's right hand before the shooting. (Heiberger Dep. pp. 14-15, Ex. 40 at pp. 9-13; Munday Expert Report at pp. 5-7) A reasonable jury could find that Defendant Mobley did not see the gun until <u>after</u> the shooting when Mobley approached Mr. Pritchard and saw the gun lying in the grass four feet from him. (Pl's Rule 56.1 Resp. at ¶ 32)

*Scott v. Harris*, 550 U.S. 372 (2007)). This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed." *Henry*, 652 F.3d at 531 (*citing Elliot v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)); *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015). Thus, "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005).

"A police officer who shoots a fleeing suspect without 'probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others' violates that suspect's Fourth Amendment rights." *Henry*, 652 F.3d at 531-32 (*quoting Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). "Because deadly force is extraordinarily intrusive, it takes a lot for it to be reasonable." *Williams v. Strickland*, 917 F.3d 763, 769 (4th Cir. 2019) (*citing Garner*, 471 U.S. at 9) ("The intrusiveness of a seizure by means of deadly force is unmatched"). "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner*, 471 U.S. at 11. However, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be

used if necessary to prevent escape and if, where feasible, some warning has been given." *Id.* 471 U.S. at 11-12. "[T]he mere possession of a firearm by a suspect is not enough to permit the use of deadly force." *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013); *accord Betton*, 942 F.3d at 191.

Defendants contend that Defendant Mobley's use of deadly force was reasonable under the *Graham* factors. (Defs' Memo. pp. 9-10) Defendants are incorrect.

The severity of the crime and Mr. Pritchard's attempt to flee do not justify Defendant Mobley's use of deadly force. Defendant Mobley conducted a routine traffic stop because he had reasonable suspicion that Mr. Pritchard had violated two minor traffic laws and believed, but did not verify, that Pritchard was driving without a valid driver's license. (Pl's Rule 56.1 Resp. at ¶¶ 3, 6-7; Mobley Dep. p. 124) Defendants contend that during the 2.3 seconds when Mr. Pritchard exited the vehicle and started to run away, Mr. Pritchard was committing a felony offense because Mobley knew he was a convicted felon and saw a gun in his right hand. (Defs' Memo. p. 9) These facts are in dispute and a reasonable jury could find that Defendant Mobley did not know that Plaintiff was a convicted felon and did not see a gun until after the shooting. (Pl's Rule 56.1 Resp. at ¶¶ 8, 11, 13) The unlawful possession of a firearm by a fleeing felon, who was not under arrest, is not the type of serious felony crime that would allow the use of deadly force by an officer.[10] *Garner*, 471 U.S. at 11; *Williams*, 917 F.3d at 769.

---

[10] In a footnote, Defendants cite *Scott v. Harris*, 550 U.S. at 384, n. 10 for the proposition that Defendant Mobley's use of deadly force was reasonable due to the

The primary *Graham* factor at issue is whether Mr. Pritchard posed an imminent threat of serious harm to Defendant Mobley when he was running away from the traffic stop. Defendants' argument is that Defendant Mobley knew Mr. Pritchard was a criminal suspect in two prior incidents involving a firearm and that Pritchard pointed a gun at him. (Defs' Memo. p. 10) The first justification is irrelevant and erroneous. Defendant Mobley has never testified that he used deadly force because of the two prior incidents[11] and he had no reason to believe Mr. Pritchard was armed or dangerous at the time of the traffic stop. (Pl's Rule 56.1 Resp. at ¶ 8)

The major factual dispute in this case is whether Mr. Pritchard pointed a gun at Defendant Mobley while he was running away.[12] (Mobley Dep. pp. 145-46) Defendants solely rely on Defendant Mobley's testimony, which they incorrectly characterize as "uncontradicted." (Defs' Memo. p. 10) A reasonable jury could reject Defendant Mobley's testimony, find that Mr. Pritchard did not point a gun at him, and conclude that Pritchard did not pose an imminent threat of serious harm.

The video from the dash camera does not show Mr. Pritchard pointing a gun at Defendant Mobley when his arm swings backwards in a normal running

"relative culpability" of Mr. Pritchard. The facts in this case are easily distinguishable from the dangerous, 10-mile high-speed pursuit in *Scott*. Defendants rely on disputed factual evidence concerning Mr. Pritchard's alleged culpability.

[11] There are genuine factual disputes about whether Mr. Pritchard was a suspect in the Friday incident and whether Defendant Mobley knew that Pritchard was a suspect in the Saturday incident after his shift ended. (Pl's Rule 56.1 Resp. at ¶ 8)

[12] There is a genuine factual dispute about whether Mr. Pritchard pointed a gun at Defendant Mobley while exiting the vehicle. (Pl's Rule 56.1 Resp. at ¶¶ 11) Defendant Mobley did not use deadly force at this point in time. (Mobley Dep. pp. 145-46; Mobley Decl. at ¶¶ 27-28)

movement. (Mobley Dep. Ex. 35 at 14:48:52-14:48:53; Sutton Dep. pp. 49-50, Ex. 37 at p. 9; Munday Expert Report at p. 6) Moreover, the video does not show that Mr. Pritchard cocked his wrist backwards at a 45-degree angle, which would have been necessary for Defendant Mobley to have seen the barrel of the gun. (Mobley Dep. Ex. 35 at 14:48:52-14:48:53; Sutton Dep. pp. 50-51, Ex. 37 at p. 9) Two eyewitnesses, Linwood Austin and Michael Floyd, watched the incident and did not see a gun in Mr. Pritchard's hand as he was running. (Austin Interview pp. 15-16, 20-23, 50-52; Floyd Interview pp. 7-12)

Defendant Mobley's credibility is at issue and his testimony cannot be viewed as uncontroverted. Defendant Mobley has given five different and evolving explanations for shooting Mr. Pritchard. (Pl's Rule 56.1 Resp. at ¶ 31) Defendant Mobley's initial statement to Melvin Ward, the first person at the scene, was "I shot him. Guy tried to jump and run and he turned on me as he was getting out of the car with the gun in his hand." (*Id.* at ¶ 31a.) In his interviews with SBI Special Agent J.M. Lewis and Washington Police Department Captain Michael Broadwell, Defendant Mobley then claimed that Mr. Pritchard was turning or twisting to the right towards him and that he saw Pritchard's right armpit and ribcage immediately before firing his weapon. (*Id.* at ¶¶ 31b.-31c.) The physical evidence shows that Mr. Pritchard did not turn or twist his body to the right and that Defendant Mobley could not have seen his right armpit or ribcage. (*Id.* at ¶ 26) In addition, Defendant Mobley notably did not tell Mr. Ward, Special Agent Lewis, or Captain Broadwell that the gun was pointed at him when Mr. Pritchard swung his arm backwards while running.

At his deposition, Defendant Mobley disclaimed his prior statements that Mr. Pritchard twisted or turned to the right. (Pl's Rule 56.1 Resp. at ¶ 31d.) Instead, Defendant Mobley testified that he saw Mr. Pritchard's right armpit, right ribcage, and the barrel of the gun pointed at him when Pritchard swung his right arm backwards in a natural running movement. (*Id.*) At that time, Defendant Mobley was 20.4 feet away from Mr. Pritchard and at a 35-degree angle to the left. (*Id.* at ¶ 24) Mr. Pritchard was running away at a 10-degree angle and the right side of his body was facing away from Mobley. (Sutton Dep. pp. 45-47, 50-51) A reasonable jury could question the credibility and accuracy of Defendant Mobley's deposition testimony in light of the evidence and his prior statements.[13]

In his Declaration, Defendant Mobley omitted any reference to seeing Mr. Pritchard's right armpit and ribcage and now solely claims that the gun was pointed at him when Pritchard swung his right arm backwards while running. (Pl's Rule 56.1 Resp. at ¶ 31e.; Doc. 31-2 at ¶¶ 27-28) In an attempt to substantiate this claim, Defendant Mobley relies on an enhanced video image at frame 471 and contends that, within the one-tenth of a second between frames 471 and 472, he saw the barrel of the gun pointed at him and shot Mr. Pritchard. (Mobley Decl. at ¶¶ 37-37a.; Sutton Dep. pp. 34-35, Ex. 37 at p. 9) Defendant Mobley's sworn statement is not supported by the video or enhanced video images and defies logic and common sense. A reasonable jury could find that this statement was manufactured during the

---

[13] Defendant Mobley has also erroneously claimed that Mr. Pritchard was running slowly or at a jog, trot, or walk when the evidence shows that Pritchard was running quickly away. (Pl's Rule 56.1 Resp. at ¶ 23)

litigation and lacks credence. *See Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017) (*quoting Gonzales v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014) (en banc) (observing that in a deadly force case, all of the evidence - such as medical reports, contemporaneous statements by the officer, and available physical evidence - should be carefully examined at summary judgment to determine whether the officer's story is internally consistent and consistent with other known facts and circumstantial evidence).

Defendant Mobley should not be allowed to offer new justifications for his use of deadly force when he failed to properly record and document the contemporaneous events. Defendant Mobley had sufficient time and opportunity to activate his body worn camera before the shooting, but he failed to do so in violation of standard police procedures.[14] (Pl's Rule 56.1 Resp. at ¶¶ 19, 22) The body worn camera would have recorded the events from Defendant Mobley's viewpoint and likely would have been even clearer than the dash camera video. (Sutton Dep. pp. 52, 56-57; Munday Expert Report at p. 6) In addition, Defendant Mobley never completed a written statement of events although he was directed to do so at the scene by his supervisor. He did not complete an incident report or a use of force report and he was not interviewed by anyone until four days later, after he had the opportunity to consult with legal counsel. (Pl's Rule 56.1 Resp. at ¶ 31) The credibility of Defendant Mobley's testimony concerning his use of deadly force must be resolved by the jury at trial.

---

[14] Defendant Mobley had previously been disciplined in March 2017 for failing to properly activate his body camera in violation of the City of Washington's Body Worn Camera policy. (Mobley Dep. Ex. 34 at pp. 4-5)

"Before an officer may use deadly force, he should give a warning if it is feasible." *Hensley v. Price*, 876 F.3d 573, 584 (4th Cir. 2017) (*citing Garner*, 471 U.S. at 11-12). The Fourth Circuit has clarified that a warning should be given "unless there is an immediate threatened danger." *Hensley*, 876 F.3d at 584. In this case, it is undisputed that Defendant Mobley shot Mr. Pritchard without giving him a verbal warning. (Complaint/Answer at ❡ 53) At the time of the shooting, Mr. Pritchard did not pose an imminent threat of serious harm to Defendant Mobley. It was feasible for Defendant Mobley to give a verbal warning and, according to Plaintiff's law enforcement experts, his failure to do so violated accepted law enforcement standards.[15] (Pl's Rule 56.1 Resp. ❡ 30)

Based on the evidence, a reasonable jury could find that Defendant Mobley overreacted and shot a man in the back who was running away from a traffic stop and did not pose an imminent threat of serious physical harm to him or others. Defendant Mobley's Motion for Summary Judgment on Plaintiff's excessive force claim should be denied.

## II.    Defendants are Not Entitled to Summary Judgment on Plaintiff's Civil Battery Claim.

Plaintiff asserted a claim under North Carolina law against Defendant Mobley for civil battery and against Defendant City of Washington under the doctrine of *Respondeat Superior*. (Complaint at ❡❡ 29-31, 69-75) In an action against a law enforcement officer for civil battery, a plaintiff must show that an officer used force

---

[15] When deadly force is reasonably necessary, the City of Washington's Use of Force policy requires the officer, where feasible, to identify himself and state his intent to shoot. (Mobley Dep. Ex. 16 at p. 2)

that "was excessive under the given circumstances." *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 625, 538 S.E.2d 601, 614 (2000). "N.C. Gen. Stat. § 15A-401(d)(2) delineates the circumstances under which an officer's use of deadly force is justified." *Hart v. Brienza*, 246 N.C. App. 426, 431, 784 S.E.2d 211, 216 (2016); *see also Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). This statute allows the use of deadly force when it is reasonably necessary to defend the officer or a third person "from what he reasonably believes to be the use or imminent use of deadly physical force…." N.C. Gen. Stat. § 15A-401(d)(2) (2020). Summary judgment should be denied on a civil battery claim when the facts, viewed in the light most favorable to Plaintiff, show that an officer used deadly force "under no imminent threat and without warning." *Hensley*, 876 F.3d at 587.

Defendants' only argument is that they are entitled to summary judgment on Plaintiff's civil battery claim because Defendant Mobley's use of force was objectively reasonable under the Fourth Amendment. (Defs' Memo. pp. 10-11) Plaintiff disagrees. The evidence, viewed in the light most favorable to Plaintiff, shows that Mr. Pritchard did not pose an imminent threat of serious physical harm to Defendant Mobley while he was running away and that Defendant Mobley failed to give a verbal warning even though it was feasible. *Supra* at pp. 9-14. Defendant Mobley's use of deadly force was excessive, unjustified, and not reasonably necessary to defend himself or others from the use of deadly physical force. Defendants' Motion for Summary Judgment on Plaintiff's civil battery claim should be denied.

**III.    Defendant Mobley is Not Entitled to Summary Judgment on the Defense of Qualified Immunity.**

The doctrine of qualified immunity shields law enforcement officers from civil liability under 42 U.S.C. § 1983 so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). Once the Court determines that the facts, viewed in the light most favorable to the Plaintiff, establish a Fourth Amendment violation, the Court must determine "whether the right at issue was 'clearly established' at the time of the officer's conduct." *Betton*, 942 F.3d at 190 (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The theory behind the clearly established law principle is that an officer is entitled to fair warning that his conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002). "The burden of establishing the affirmative defense of qualified immunity rests on the party seeking to invoke it." *Betton*, 942 F.3d at 190; *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007) (*citations omitted*).

In evaluating a qualified immunity defense, "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (per curiam) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152-53 (2018) (*quoting Mullenix*, 136 S.Ct. at 308). Although there does not need to be "a case directly on point for a right

to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S.Ct. at 1152 (*quoting White*, 137 S.Ct. at 551). This is because "qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S.Ct. at 308 (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The facts, viewed in the light most favorable to Plaintiff, show that Defendant Mobley shot Mr. Pritchard in the back, without any warning, while he was fleeing a traffic stop and did not pose an imminent threat of serious harm. *Supra* at pp. 9-14. Since 1985, the law has been clearly established under the Fourth Amendment that a law enforcement officer may not shoot an individual fleeing an officer, even if a suspected felon, unless the individual poses an immediate threat of death or serious physical injury to the officer or others. *Garner*, 471 U.S. at 3, 11. It has been clearly established that deadly force is only constitutionally permissible if the fleeing suspect "threatens the officer with a weapon" and "if where feasible, some warning has been given." *Id.*, 471 U.S. at 11-12. This is an "obvious case" where the facts are governed by the clearly established law articulated in *Garner*. *See Kisela*, 138 S.Ct. at 1153 (*citing White*, 137 S.Ct. at 552) (observing that "the general rules in *Garner* and *Graham* do not by themselves create clearly established law outside an obvious case.")

*Garner* has been applied by the Fourth Circuit as clearly established law under analogous facts. In *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011) (en banc), the law enforcement officer shot, without warning, a misdemeanant suspect who was

fleeing arrest and did not pose a threat. The Fourth Circuit, sitting en banc, held that the officer's use of deadly force "was objectively unreasonable and violated clearly established law, namely *Tennessee v. Garner's* prohibition against shooting suspects who pose no significant threat of death or serious physical injury to the officer or others." *Id.*, 652 F.3d at 536. The Court emphasized in *Henry* that "[n]othing removes this case from the straightforward context of *Garner*." *Id.*

There is a genuine dispute of fact in this case about whether Defendant Mobley ever saw a gun in Mr. Pritchard's hand. (Pl's Rule 56.1 Resp. at ¶¶ 11, 13-14, 27, 32) Nevertheless, applying *Garner*, the law is clearly established in the Fourth Circuit that "an officer does not possess the unfettered authority to shoot a member of the public simply because that person is carrying a weapon." *Cooper*, 735 F.3d at 159; *accord Betton*, 952 F.3d at 191 (holding that the law was clearly established at the time of the shooting in 2015); *Estate of Jones*, 961 F.3d at 670 (holding that the law was clearly established at the time of the shooting in 2013); *Young v. Prince George's County*, 355 F.3d 751, 757 (4th Cir. 2004) ("The fact that a suspect is armed, however, does not render all force used by an officer reasonable"). "Instead, deadly force may only be used by a police officer when, based on a reasonable assessment, the officer or another person is <u>threatened</u> with the weapon." *Cooper*, 735 F.3d at 159 (*emphasis in original*). In addition, the necessity of a verbal warning, when feasible, before the use of deadly force is clearly established law in the Fourth Circuit. *Hensley*, 876 F.3d at 584. Thus, the Fourth Circuit has denied qualified immunity to officers when

plaintiffs' evidence showed that the suspect "never raised the gun, never threatened the Deputies, and never received a warning command." *Id.*, 876 F.3d at 586.

Defendant Mobley does not address *Garner* or any of the Fourth Circuit cases cited above. Rather, relying on disputed issues of fact, Defendant solely cites *Knight v. City of Fayetteville*, 234 F.Supp.3d 669 (E.D.N.C. 2017) and claims that the law is not clearly established. (Defs' Memo. pp. 12-13). Defendant Mobley is mistaken and the facts in *Knight* are distinguishable. In *Knight*, the passenger/decedent, Lawrence Graham, jumped out of a car with a gun and ran away from a traffic stop after an officer discovered several bags of marijuana and cocaine on the driver who pushed the officer, attempted to flee, and screamed loudly when taken to the ground. *Knight*, 234 F.Supp.3d at 680, 686. During this chaotic and dangerous encounter, Defendant Little, the second officer at the scene, saw Graham exit and run around the vehicle holding a gun in his right hand in a firing position and gave a verbal warning to stop. Defendant Little then fired his gun when "Graham did not cease his movements, but to the contrary commenced an upward and outward arm movement, during which movement Graham's gun broke a '90 degree plane' such that defendant Little saw the 'barrel of the weapon was coming back' in defendant Little's direction." *Id.* at 687. Based on these facts, the Court held that defendant Little did not use excessive force because he "reasonably would have perceived an imminent threat to his safety from Graham's handling of his gun." *Id.* at 689.

In contrast to *Knight*, the traffic stop in this case involved a single individual, was not chaotic or dangerous, and could not reasonably be perceived by Defendant Mobley "as the start of a serious coordinated effort to threaten the officers on the scene." *Knight*, 234 F.Supp.3d at 687. Unlike the decedent in *Knight*, Mr. Pritchard did not raise a gun in a firing position or turn his body with the gun towards Defendant Mobley as he was running away, and Mobley did not see the barrel of the weapon coming back in his direction. (Pl's Rule 56.1 Resp. at ¶¶ 11, 13-14, 26-27) Unlike the officer in *Knight*, Defendant Mobley did not give a verbal warning before shooting. The facts in *Knight* are materially distinguishable from this case and the holding in *Knight* does not create a "gray area" in the law. *See Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir. 2001).

Defendant has not met his burden of proof on qualified immunity and cannot show that Fourth Amendment law on deadly force was not clearly established under the facts of this case. The Court should deny Defendant Mobley's Motion for Summary Judgment on the defense of qualified immunity.

## IV. Defendant Mobley Is Not Entitled to Summary Judgment on the Defense of Public Officer Immunity.

Under North Carolina law, a law enforcement officer is entitled to public officer immunity "unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Wilcox v. City of Asheville*, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012); *Hensley*, 876 F.3d at 587. Public officer immunity "is unavailable to officers who violate clearly established rights because an officer acts with malice when he 'does that which a man of reasonable intelligence would know

to be contrary to his duty.'" *Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003) (*quoting Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984)). An officer is also not entitled to public officer immunity when he uses deadly force that was not reasonably necessary under the circumstances in violation of his duty under N.C. Gen. Stat. § 15A-401(d). *Hart v. Brienza*, 246 N.C. App. 426, 431-32, 784 S.E.2d 211, 215-16 (2016); *Hensley*, 876 F.3d at 587-77; *Cooper*, 735 F.3d at 160.

Defendant Mobley is not entitled to public officer immunity because he violated the clearly established rights of Mr. Pritchard and used deadly force when it was not authorized under N.C. Gen. Stat. § 15A-401(d). Defendant Mobley argues that he did not use excessive force and did not act with malice. (Defs' Memo. pp. 13-14) However, the evidence, viewed in the light most favorable to Plaintiff, could lead a reasonable jury to conclude that Defendant Mobley shot a man who was running away from a traffic stop and did not pose a threat of serious harm. Under these circumstances, Defendant Mobley used excessive force and acted with malice under North Carolina law. *See Bartley v. City of High Point*, 272 N.C. App. 224, 227-33, 846 S.E.2d 750, 754-58 (2020) (holding that summary judgment was properly denied on public officer immunity when plaintiff's evidence showed that the officer used unnecessary and excessive force). Public officer immunity does not shield Defendant Mobley from liability.[16] Defendant Mobley's Motion for Summary Judgment on the defense of public officer immunity should be denied.

---

[16] Public officer immunity is an affirmative defense only available to Defendant Mobley and cannot be asserted by Defendant City of Washington. *Wilcox*, 222 N.C. App. at 288; *Thompson v. Town of Dallas*, 142 N.C. App. 651, 655, 543 S.E.2d 901, 905 (2001); *Lee v. Town of Seaboard¸* 863 F.3d 323, 330 n. 6 (4th Cir. 2017).

## Conclusion

For the foregoing reasons, Plaintiff requests that the Court deny Defendants' Motion for Summary Judgment. (Doc. 30)

This the 18th day of June, 2021.

/s/ Carlos E. Mahoney
Carlos E. Mahoney
Glenn, Mills, Fisher & Mahoney, P.A.
P.O. Drawer 3865
Durham, NC 27702-3865
Telephone: 919-683-2135
Facsimile: 919-688-9339
cmahoney@gmfm-law.com
N.C. State Bar No. 26509
Counsel for Plaintiff

Sean P. Cecil
Edelstein & Payne
P.O. Box 28186
Raleigh, NC 27611
Telephone: 919-828-1456
Facsimile: 919-828-4689
sean@edelsteinpayne.com
N.C. State Bar No. 48882
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I, Carlos E. Mahoney, hereby certify that on June 18, 2021, I electronically filed the foregoing document entitled, **Plaintiff's Memorandum in Response to Defendants' Motion for Summary Judgment**, with the Clerk of Court for the Eastern District of North Carolina using the CM/ECF system which will give notice of the filing to the following counsel of record.

> Clay A. Collier
> Norwood P. Blanchard, III
> Crossley McIntosh Collier
> Hanley & Edes, PLLC
> 5002 Randall Parkway
> Wilmington, NC 28403
> clayc@cmclawfirm.com
> norwood@cmclawfirm.com
> Counsel for Defendants

> Sean P. Cecil
> Edelstein & Payne
> P.O. Box 28186
> Raleigh, NC 27611
> sean@edelsteinpayne.com
> Counsel for Plaintiff

> /s/ Carlos E. Mahoney
> Carlos E. Mahoney
> Glenn, Mills, Fisher & Mahoney, P.A.
> P.O. Drawer 3865
> Durham, NC 27702-3865
> Telephone: (919) 683-2135
> Facsimile: (919) 688-9339
> cmahoney@gmfm-law.com
> N.C. State Bar No. 26509
> Counsel for Plaintiff