

## NCLM
### NC LEAGUE OF MUNICIPALITIES

**Interlocal Risk Finance Fund of North Carolina**

I certify that this is a true and accurate copy of insurance coverage through IRFFNC as follows:

    City of Washington
    For the period of:
    07/01/2018 to 07/01/2019

Consisting of the following:
    Common Policy Declarations – 10 pages
    Forms/Endorsement Schedule - 4 pages
    Common Policy Conditions & Endorsements – 17 pages
    Police Professional Liability Coverage Form & Endorsements – 13 pages

Certified this Date of:      9/17/19

*Ariele D'Angelo*

Ariele D'Angelo, CISR, AU, CBIA, CIC
Senior Property and Casualty Underwriter
North Carolina League of Municipalities
Administrator for the Interlocal Risk Financing Fund of North Carolina

434 Fayetteville St Suite 1900, Raleigh, NC 27601
(800) 228-0986      (919) 715-4000



EXHIBIT
1

D-075

Interlocal Risk Financing Fund of North Carolina
**POLICE PROFESSIONAL LIABILITY COVERAGE PART DECLARATIONS**  PPLDEC (07/2005)

**Policy Number:** PL-62084-2018-00

**NAMED INSURED & MAILING ADDRESS:**

City of Washington
PO Box 1988
Washington, NC 27889

**POLICY PERIOD:**   From: 07/01/2018    To: 07/01/2019
At 12:01 a.m. Standard Time at your mailing address shown above.

| Limits of Insurance | |
|---|---|
| Each Occurrence | $5,000,000 |
| Annual Aggregate | $5,000,000 |
| Deductible (Each Occurrence) | $10,000 |
| Premium | ▬▬▬▬ |

**Forms and Endorsements:**
Refer to "IRFFNC Forms and Endorsements Schedule"

# IRFFNC POLICE PROFESSIONAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Interlocal Risk Financing Fund of North Carolina, hereinafter called "IRFFNC."

The word "insured" means any person or organization qualifying as such under SECTION II-WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION V-DEFINITIONS.

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B. This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" and "property damage" must be caused by an "occurrence" and arise out of the performance of the insured's law enforcement duties and all necessary and incidental operations. The "occurrence" must take place in the "coverage territory." We will have the right and duty to defend any suit seeking those damages. But:
      (1) The amount we will pay for damages is limited as described in SECTION III-LIMITS OF INSURANCE;
      (2) We may investigate and settle any claim or "suit" at our discretion; and
      (3) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages A or B.
   b. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."
   c. "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

2. **Exclusions.**

   This insurance does not apply to:

   a. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
      (1) Assumed in a mutual law enforcement assistance agreement or contract between political subdivisions; or
      (2) That the insured would have in the absence of the contract or agreement.
   b. Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law, including acts arising out of class action suits.

  c. "Bodily injury or property damage" to:
     (1) An employee of the insured or an auxiliary or volunteer law enforcement officer arising out of and in the course of employment by the insured; or
     (2) The spouse, child, parent, brother or sister of that employee, auxiliary or volunteer law enforcement officer, as a consequence of (1) above.

     This exclusion applies:
     (1) Whether the insured may be liable as an employer or in any other capacity; and
     (2) To any obligation to share damages with or repay someone else who must pay damages because of the "bodily injury" or "property damage".

  d. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (including "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

  e. "Property damage" to:
     (1) Property you own, rent, or occupy;
     (2) Property loaned to you;
     (3) Personal property in your care, custody or control, except property of persons in custody by virtue of arrest or detention;

  f. Claims or "suits" for damages arising out of the willful violation of any federal, state or local statute, ordinance, rule or regulation committed by or with the knowledge or consent of any insured.

  g. Claims or "suits" for damages arising out of acts of fraud committed by or at the direction of the insured with affirmative dishonesty or actual intent to deceive or defraud;

  h. To claims or "suits" arising out of the performance of any law enforcement activity for anyone other than the "Named Insured". This exclusion shall not apply if the act or service arises as the result of a mutual law enforcement assistance agreement or contract between political subdivisions, nor does it apply to any departmentally approved activities.

  i. Any claims or "suits" seeking relief or redress in any form other than compensatory damages. Nor shall we have any obligation to indemnify the insured for any costs, fees or expenses which the insured shall become obligated to pay as a result of an adverse judgment for injunctive or declaratory relief; however, we will afford defense to the insured for such claims or "suits", if not otherwise excluded, where compensatory damages are requested.

  j. Claims or "suits" against the insured for acts of another officer or employee unless said officer or employee is also insured for said acts in a policy of insurance issued by us.

  k. "Bodily injury" arising out of any:
     (1) Refusal to employ;
     (2) Termination of employment;
     (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or
     (4) Consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

l.  Any claim or "suit" seeking punitive or exemplary damages. If a suit shall have been brought against the insured for a claim falling within the coverage provided by this policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action, but we shall not have an obligation to pay for any cost, interest, or damages attributed to punitive or exemplary damages.

m.  Any claim or "suit" arising out of the actual or alleged transmission of any communicable disease by an insured or the transmission of any communicable disease from one inmate to another.

n.  Any loss, cost, or expense arising, in whole or part, out of any of the following: (1) the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; or (2) any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or (3) any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

o.  Any claims or "suits" involving any insured employed by an establishment where the receipts from the sale of alcoholic beverages is more than 50% of the total receipts (excluding cover charges).

p.  Any claims or "suits" arising from or relating in any way to any alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or sexual acts of any nature, kind or description, by whatever name used.

q.  Any claims or "suits" arising out of, resulting as a consequence of, or related to lead, whether or not there is another cause of loss which may have contributed concurrently or in any sequence to a loss, as described in paragraphs (1) through (4) below:

   (1) "Bodily Injury" or "property damage" arising out of, resulting from, caused by, or contributed to by lead, exposure to lead, use or existence of lead, contact with lead, or the actual, alleged or threaten ingestion, inhalation or absorption of lead in any form;

   (2) Any damages or any loss or expense arising out of any:

      (a) claim or suit by or on behalf of any governmental authority or any other alleged responsible party because of, or

      (b) request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be, or should be responsible for:

         (i) Assessing the presence, absence or amount or effects of lead;

         (ii) Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating lead; or

         (iii) Responding to lead in any way other than as described in q.(2)(b)(i) and q.(2)(b)(ii).

    (3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

    (4) Any obligation to share damages with or repay someone else in connection with any of the subsections above.

r. Any claims or 'suits" against the insured, due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond, arising directly or indirectly out of:

    (1) Any actual or alleged failure, malfunction or inadequacy of:

      (a) Any of the following, whether belonging to any insured or to others:

        (i) Computer hardware, including microprocessors;

        (ii) Computer application software;

        (iii) Computer operating systems and related software;

        (iv) Computer networks;

        (v) Microprocessors (computer chips) not part of any computer system; or

        (vi) Any other computerized or electronic equipment or components; or

      (b) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph r.(1)(a) above.

    (2) Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph r.(1) above.

s. Any claim made against the insured for any loss, cost or expense arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos. This includes, but not limited to, any costs for abatement, mitigation, removal or disposal of asbestos.

This exclusion also includes, but is not limited to:

(1) Any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given in connection with the above; or

(2) Any obligation to share damages with or repay someone else who must pay damages.

t. **Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

## IRFFNC POLICE PROFESSIONAL LIABILITY COVERAGE FORM

### COVERAGE B. PERSONAL INJURY LIABILITY

1. **Insuring Agreement.**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B. We will have the right and duty to defend any "suit" seeking those damages. But:
      (1) The amount we will pay for damages is limited as described in SECTION III-LIMITS OF INSURANCE;
      (2) We may investigate and settle any claim or "suit" at our discretion; and
      (3) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages A or B.
   b. This insurance applies to "personal injury" only if caused by an offense:
      (1) Committed in the "coverage territory" during the policy period; and
      (2) Arising out of the conduct of your law enforcement activities.

2. **Exclusions.**

   This insurance does not apply to:

   a. "Personal injury":
      (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
      (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
      (3) Arising out of the willful violation of any federal, state or local statute, ordinance, rule or regulation committed by or with the knowledge or consent of any insured;
      (4) Arising out of acts of fraud committed by or at the direction of the insured with affirmative dishonesty or actual intent to deceive or defraud; or
      (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages:
         (a) Assumed in a mutual law enforcement assistance agreement or contract between political subdivisions;
         (b) That the insured would have in the absence of the contract or agreement.

   b. "Personal injury" to:
      (1) An employee of the insured or an auxiliary or volunteer law enforcement officer arising out of and in the course of employment by the insured; or
      (2) The spouse, child, parent, brother or sister of that employee, auxiliary or volunteer law enforcement officer, as a consequence of (1) above.

      This exclusion applies:
      (1) Whether the insured may be liable as an employer or in any other capacity; and
      (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   c. To claims or "suits" arising out of the performance of any law enforcement activity for anyone other than the "Named Insured". This exclusion shall not apply if the act or service arises as the result of a mutual law enforcement assistance agreement or contract between political subdivisions, nor does it apply to any departmentally approved activities.

# IRFFNC POLICE PROFESSIONAL LIABILITY COVERAGE FORM

   d. "Personal injury" arising out of any:
      (1) Refusal to employ;
      (2) Termination of employment;
      (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or
      (4) Consequential "personal injury" as a result of (1) through (3) above.

      This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the "personal injury".

   e. Any claims or "suits" seeking relief or redress in any form other than compensatory damages. Nor shall we have any obligation to indemnify the insured for any costs, fees or expenses which the insured shall become obligated to pay as a result of an adverse judgment for injunctive or declaratory relief, however, we will afford defense to the insured for such claims or "suits", if not otherwise excluded, where compensatory damages are requested.

   f. Claims or "suits" against an insured for acts of another officer or employee unless said officer or employee is also insured for said acts in a policy of insurance issued by us.

   g. Any claim or "suit" seeking punitive or exemplary damages. If a suit shall have been brought against the insured for a claim falling within the coverage provided by this policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action, but we shall not have an obligation to pay for any cost, interest, or damages attributed to punitive or exemplary damages.

   h. A claim or "suit" arising out of any communicable disease by an insured or the transmission of any communicable disease from one inmate to another.

   i. Any claims or "suits" arising from or relating in any way to any alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or sexual acts of any nature, kind or description, by whatever name used.

      For the limited category of SUITS or CLAIMS against the named insured for vicarious liability based upon alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or other sexual acts by a police officer, a defense only will be provided for the named insured under this section, but without any coverage for any judgment which might be entered against any insured or police officer and without any indemnification for any settlement which might be entered into by or on behalf of any insured or police officer.

      However, even where a defense is provided to the named insured under this section, there is no coverage provided for any SUITS or CLAIMS arising from or relating in any way to any alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or sexual acts of any nature, kind or description, by whatever name used, and there is no duty to provide any indemnification for any judgment which might be entered against any insured, nor for any settlement which might be entered into by or on behalf of any insured, arising out of, relating to, or in any way connected with any alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or sexual acts of any nature, kind or description, by whatever name used.

   j. Any claims or "suits" arising out of, resulting as a consequence of, or related to lead, whether or not there is another cause of loss which may have contributed concurrently or in any sequence to a loss, as described in paragraphs (1) through (4) below:

(1) "Personal injury" arising out of, resulting from, caused by, or contributed to by lead, exposure to lead, use or existence of lead, contact with lead, or the actual, alleged or threaten ingestion, inhalation or absorption of lead in any form;

(2) Any damages or any loss or expense arising out of any:

   (a) Claim or suit by or on behalf of any governmental authority or any other alleged responsible party because of, or

   (b) Request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be, or should be responsible for:

      (i) Assessing the presence, absence or amount or effects of lead;

      (ii) Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating lead; or

      (iii) Responding to lead in any way other than as described in j.(2)(b)(i) and j.(2)(b)(ii).

(3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

(4) Any obligation to share damages with or repay someone else in connection with any of the subsections above.

k. **Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

l. Any claims or "suits" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (including "unmanned aircraft"), owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading." This applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (including "unmanned aircraft"), that is owned or operated by or rented or loaned to any insured.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments and appeal bonds required in any "suit" we defend, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work. Such expenses, do not include salaries of officials or employees of the named insured.

4. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

5. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

7. Expenses incurred by the insured for first aid to others at the time of an "occurrence", for "bodily injury" to which this policy applies.

These payments will not reduce the Limits of Insurance.

## SECTION II - WHO IS AN INSURED

1. Each of the following is an insured:

   a. The insured named in the Declarations.

   b. Your employees, but only for acts within the scope of their employment by you.

   c. Volunteers or reserves while performing law enforcement activities for you at your request.

   However, none of these employees, volunteers or reserves is an insured for:

   (1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment; or

   (2) "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

   (3) "Property damage" to property owned or occupied by or rented or loaned to that employee, volunteer or reserve or any of your other employees, volunteers or reserves.

2. The political subdivision in which you are located is an insured, but only with respect to liability of the political subdivision for which an insured, as defined in paragraph 1.a., 1.b., or 1.c. above, is also liable.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The Annual Aggregate Limit is the most we will pay for the sum of damages under Coverage A and Coverage B.

3. Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of damages under Coverage A and Coverage B because of all "bodily injury" , "property damage" and "personal injury" arising out of any one "occurrence."

# IRFFNC POLICE PROFESSIONAL LIABILITY COVERAGE FORM

The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - POLICE PROFESSIONAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's successor will not relieve us of our obligations under this policy.

2. **Duties In The Event Of "Occurrence", Claim Or "Suit",**

   a. You must see to it that we are notified promptly of an "occurrence" which may result in a claim. Notice should include:

      (1) How, when and where the "occurrence" took place: and

      (2) The names and addresses of any injured persons and witnesses.

   b. If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit."

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this policy:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us under this policy unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

   a. The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of our liability under this policy shall not be reduced by the existence of such other insurance.

PPL-01 (07/2016)  Page 9 of 13

## IRFFNC POLICE PROFESSIONAL LIABILITY COVERAGE FORM

When this insurance is excess, we will have no duty under Coverage A to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all such other insurance.

b. When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, we shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable Method of Sharing provision below:

c. Method of Sharing

(1) If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this method each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

(2) If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

The insurance afforded by this policy for the ownership, maintenance or use of the premises designated in the Declarations (including the ways immediately adjoining such premises on land) and all necessary and incidental operations thereto shall be in excess of any other valid and collectible premises liability insurance available to the insured, whether such premises liability is stated to be primary, contributing, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the limits of liability provided in this policy.

## 5. Premium Audit.

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. The final premium shall be based on the average number of all paid law enforcement officers of the Named Insured, full and part time, during the policy period determined as follows:

(1) The Named Insured shall maintain records and report, within thirty days after the end of the policy period, the highest number of paid law enforcement officers on any one day in each month for each month this policy was in effect.

(2) The average number of such officers shall be determined by dividing the sum of the number of such officers determined above by the number of months the policy was in effect.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations.**

    By accepting this policy, you agree that:

    a. The application for insurance completed in solicitation of this insurance is made a part of this policy as though set forth in full herein;

    b. The statements in the Declarations and Application for insurance are accurate and complete;

    c. Those statements are based upon representations you made to us; and

    d. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds.**

    Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

    a. As if each Named Insured were the only Named Insured; and

    b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us.**

    If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **Deductible**

    a. Our obligation under Section I Coverage A. and Coverage B. to pay damages on behalf of the insured applies only to the amount of damages in excess of any deductible amount stated in the Declarations.

    b. The deductible amount stated in the Declarations, if any, applies to all damages because of "bodily injury", "property damage" and "personal injury" sustained by one person or organization as the result of any one "occurrence."

    c. The deductible amount stated in the Declarations applies to each "occurrence" and includes loss payments and adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

    d. The terms of this insurance, including those with respect to (1) our right and duty to defend any "suits" seeking damages, and (2) your duties in the event of an "occurrence," claim or "suit" apply irrespective of the application of the deductible amount.

    e. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

### SECTION V - DEFINITIONS

1. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

3. "Coverage territory" means:

    a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of the activities of a person whose home is in the territory described in a. above, but is away for a short time on your law enforcement activities; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

4. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto;"

   b. While it is in or on an aircraft, watercraft or "auto;" or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or auto.

5. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing;

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

6. "Occurrence" means an event, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury", "personal injury", or "property damage" by any person or organization and arising out of the insured's law enforcement duties.

   All claims arising out of (a) a riot or insurrection, (b) a civil disturbance resulting in an official proclamation of a state of emergency, (c) a temporary curfew, or (d) martial law are agreed to constitute one "occurrence".

7. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies, invasion of the right of private occupancy, or denial of public occupancy;
   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication of material that violates a person's right of privacy;
   f. Assault and battery by a police officer, but only for acts or omissions incident to police arrest, while investigating a potential arrest, while making or attempting to make an arrest, while detaining any person under arrest, or while resisting any person's attempt to avoid or escape an arrest. No act or offense shall be deemed to be or result in "personal injury" for "assault and battery" unless committed in the regular course of the police officer's duty for the named insured and in furtherance of the official police business of the named insured. Any coverage for assault and battery by a police officer is limited to acts or omissions incident to a police arrest, and specifically excludes any coverage, indemnification or defense against any SUITS or CLAIMS arising from or relating in any way to any alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or sexual acts of any nature, kind or description, by whatever name used.
   g. Erroneous service of process;
   h. Violation of property rights;
   i. Discrimination, unless insurance thereof is prohibited by law;
   j. Humiliation or mental anguish;
   k. Violation of civil rights protected under 42 USC 1981 et seq. or State Law;

   provided that no offense shall be deemed to be or result in "personal injury" unless committed in the regular course of duty by the insured.

8. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property; or
   b. Loss of use of tangible property that is not physically injured.

9. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage," or "personal injury" to which this insurance applies are alleged. "Suit" includes an arbitration proceeding or any other alternative dispute resolution proceeding alleging such damages to which you must submit or submit with our consent.

10. "Unmanned aircraft" means an aircraft that is not:
    a. Designed;
    b. Manufactured; or
    c. Modified after manufacture;
    to be controlled directly by a person from within or on the aircraft.